## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT NOCK, 1625 North Division Street, Salisbury, Wicomico County, Maryland 21804, *on behalf of himself and others similarly situated*<br><br>*Plaintiff,*<br><br>v.<br><br>PALMCO ADMINISTRATION, LLC, d/b/a Indra Energy, 8751 18th Avenue, Brooklyn, New York 11214; and PALMCO POWER MD, LLC, d/b/a Indra Energy, 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202<br><br>*Defendants.* | No. 1:24-00662<br><br>**CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT

Plaintiff, Robert Nock ("Plaintiff" or "Nock") individually, and on behalf of all others similarly situated, brings this action against PalmCo Administration, LLC d/b/a Indra Energy ("Indra National") and PalmCo Power MD, LLC d/b/a Indra Energy ("Indra Maryland") (collectively "Indra" or "Defendants") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* as well as the Maryland Telephone Consumer Protection Act, Md. Com. Law § 14-3201, *et seq.* ("Maryland TCPA"). In support of this Complaint, Plaintiff asserts as follows:

## BACKGROUND
## TELEMARKETING AND THE TCPA

1.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights. Specifically, the TCPA protects consumers' right to be left alone from unwanted telemarketing calls.

2.      A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq*., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

4.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers'").

5.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

6.      Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7.      In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

8.      The private right of enforcement of the TCPA is critical to stopping the

proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## THE PARTIES

9.       Mr. Nock is a natural person, who at all times relevant hereto, resided in Maryland.

10.      Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

11.      Defendant Palmco Administration, LLC ("Indra National") is a New York limited liability company with its principal place of business located at 8751 18th Avenue, Brooklyn, New York 11214.

12.      Indra National is an energy services management company that operates several different energy and gas providers across several states as alleged below. It operates under the assumed name of Indra Energy, and all of its corporate affiliates alleged below do business using the same name.

13.      Defendant Palmco Power MD LLC ("Indra Maryland") is a Maryland limited liability company which lists its principal place of business with the Maryland Public Service Commission as 7 St. Paul Street, Suite 820, Baltimore, Maryland 212021.

14.      The above-referenced address is also Indra Maryland's agent for service of process, Corporation Service Company. On information and belief, Indra New York operates Indra Maryland and its business from its place of business in Brooklyn.

15.      Like Indra National, Indra Maryland does business under the name "Indra

Energy." Indra Maryland is licensed to provide retail electricity and natural gas in the state of Maryland, and operates Indra's business in Maryland. Indra Maryland has affiliates licensed to provide gas and/or electricity in Connecticut, the District of Columbia, Delaware, Illinois, New Jersey, Massachusetts, Pennsylvania, and Virginia, all of which do business as "Indra Energy," and all of which are operated by Indra New York from its offices in Brooklyn.

16.     Since 2010, Indra Maryland has maintained a license from the Maryland Public Service Commission to sell electricity and gas directly to consumers, which commodities are physically supplied by the consumers' local utilities.

17.     On information and belief, Indra National supplies the personnel who physically execute contracts or regulatory certifications for Indra Maryland, and operate Indra Maryland's business, including enrollment and verification, billing, financing and accounting, operations and database solutions (including interfacing with the utilities that physically supply the electricity and gas that Indra sells to consumers), marketing and public relations strategy (including managing its telemarketing and other sales channels), financial forecasting and budgeting, procurement, risk management, and every other function of Indra Maryland.

18.     On information and belief, Indra National employs, controls, and supplies the individual natural persons—the officers, employees, and agents—who actually operate and control Indra's day-to-day business.

19.     Because Indra New York and Indra Maryland are owned and operated by the same people, it is not possible to attribute the actions of these individuals to Indra New York or Indra Maryland without also attributing them to each other.

20.     Accordingly, Plaintiff alleges Indra National and Indra Maryland acted in concert and as a joint enterprise at all times relevant to this matter

21.     Each of Defendants are a "person" as that term is defined by 47 U.S.C. §153(39).

22.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

24.     This Court has personal jurisdiction over the Defendants because Defendants transact business and perform work and services in Maryland, and caused tortious injury in Maryland. *Cf.* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

25.     Specifically, Defendants purposefully and knowingly called Nock on his "410" and "443" area code phone numbers, which are associated with the State of Maryland.

26.     Further, because one or more Defendant is headquartered in this District and a substantial portion of the events and occurrences underlying this action occurred within this District, venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS SPECIFIC TO NOCK

27.     Nock has two residential telephone numbers: a cell phone, (443) 523-XXXX ("443 Number") and a landline, (410) 289-XXXX ("410 Number").

28.     Nock registered both his 443 Number and 410 Number on the National Do Not Call Registry years prior to the relevant time period of this lawsuit.

29.     At all times relevant to this action, Nock used both of those telephone numbers for residential purposes, such as speaking with friends and family.

30.     Nock never provided his telephone numbers to Defendants or their agents for any

purpose whatsoever as he never had a business relationship with them.

31.     Defendants and their agents did not otherwise obtain Nock's prior express written consent to make telemarketing calls to his telephone numbers. Nock was not a business associate, customer, or other person having an established relationship with Defendants.

32.     During May of 2021, Defendants placed a series of unwanted telemarketing calls to both of Plaintiff's numbers.

33.     In many of those calls, a pre-recorded message played which stated "this is an apology call from your utility" and proclaimed Nock had been "overcharged" on his energy bill.

34.     Nock could tell the messages at the beginning of the calls were pre-recorded because the tone, cadence, and language were identical in each of the various calls.

35.     Further, the voice in the recording at the beginning of the calls was non-interactive and did not pause when Nock spoke.

36.     For those reasons, Nock understands and therefore alleges that the message at the outset of the call included a pre-recorded voice.

37.     On May 18, 2021, after receiving a call from Indra, Plaintiff stated in no uncertain terms, *inter alia*, "don't ever call me again."

38.     Despite that clear and unequivocal instruction, Indra called Plaintiff on several subsequent instances.

39.     In order to ascertain the identity of the party to parties calling him, on several instances, Nock stayed on the line and engaged with the calling party.

40.     After doing so, the calling party disclosed it was calling from "Indra Energy," a trade name for Indra National and Indra Maryland.

41.     During the call of May 27, 2021, Defendants' representative stated repeatedly his company was "Indra Energy."

42.   The call Plaintiff received the day prior came from the same number, and also sought to solicit energy services.

43.   On information and belief, Defendants called Plaintiff on instances including but not limited to:

| Date/Time | Nock's called number | Caller ID of Calling Party |
|---|---|---|
| 05/18/2021 at 12:40 pm EST | (443) 523-XXXX | 443-555-7977 |
| 05/26/2021 at 12:05 pm EST | (410) 289-XXXX | 713-942-6547 |
| 05/27/2023 at 6:04 pm EST | (410) 289-XXXX | 713-942-6547 |

44.   Each of those calls were "solicitations" as defined by the TCPA, as they made as part of a campaign to encourage the purchase Indra's energy services.

45.   Defendants used misleading or inaccurate caller identification information, including "spoofed" telephone numbers with local area codes (that is, replacing the actual originating number displayed to recipients' caller ID systems—which could be used to reliably identify the vendors' calls—with a falsified ostensible outgoing telephone number). Defendants' use of spoofing entices recipients to answer telephone calls that they would not otherwise answer, and makes it difficult to attribute particular calls to Defendants. These practices allow Defendants to evade accountability for their telemarketing activities, and make it difficult for call recipients to avoid or otherwise respond to Defendants' calls (for instance, asking to be placed on Defendants' own Do Not Call list). Call recipients are only able to avoid Defendants' unwanted calls if they risk missing wanted calls, and cannot identify which companies they have instructed not to call them.

46.   The actions described herein were in violation of the TCPA.

47.   The communications from Defendants were irritating, distracting and an invasion of Plaintiff's privacy.

//

## DIRECT AND VICARIOUS LIABILITY

48.     Without having had the benefit of discovery to show otherwise, Plaintiff understands and therefore avers that Indra is directly liable for the unsolicited calls because Indra was the only party identified in those calls.

49.     Alternatively, if discovery reveals that some or all of the calls were made by third-party/parties on behalf of Indra, then Indra is vicariously liable for those calls.

50.     On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Dish Network, LLC,* 28 FCC Rcd 6574, 6588 (F.C.C. May 9, 2013) (internal citations omitted).

51.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

52.     There is no material distinction between telemarketing calls made by Defendants and/or by telemarketers who are technically third parties. The FCC's regulations "generally

establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995).

53.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

54.     Indra may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Indra. On information and belief, Defendants are closely involved with monitoring, controlling, and managing their telemarketing campaigns, are responsible for developing standards and qualifications for their agents, training those agents, and operating quality assurance programs to identify problems in their marketing process. To the extent that Defendants used third-party telemarketers to make any calls to Nock or other class members, they were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

55.     If call(s) were placed directly by Indra (either Indra Maryland or Indra National), then Indra is directly liable for those calls.

56.     In the alternative, if Indra outsourced telemarketing activities to third-parties, those third-parties would be liable for those calls.

//

## CLASS ALLEGATIONS

57.     Plaintiff brings this claim on behalf of six classes, pursuant to Federal Rule of

Civil Procedure 23. Plaintiff seeks to represent the following classes:

### NDNC Class:

All persons in the United States who received two or more calls to their
residential wireline or cellular telephone numbers, within any 12-month period by
or on behalf of Defendants, in connection with the sale of its energy services,
from four years prior to the date of Plaintiff's original complaint through the date
the Court certifies the class.

### IDNC Class:

All persons in the United States who received two or more telemarketing calls to
their cellular or residential telephone numbers within any 12-month period by or
on behalf of Defendants, from four years prior to the date of Plaintiff's original
complaint through the date the Court certifies the class, during which time(s)
Defendants had not instituted or maintained the procedures or minimum standards
required under 47 C.F.R. § 64.1200(d).

### Pre-Recorded Call Class:

All persons in the United States who received one or more telephone calls to a
residential telephone number using an artificial voice or pre-recorded voice to
deliver a message, from four years prior to the date of Plaintiff's original
complaint through the date the Court certifies the class.

### Maryland NDNC Class:

All persons who received two or more telemarketing calls to their cellular or
residential telephone numbers within any 12-month period by or on behalf of
Defendants, from four years prior to the date of Plaintiff's original complaint
through the date the Court certifies the class, who are identified by Defendants'
records as residing in the State of Maryland at the time of the call(s).

### Maryland IDNC Class:

All persons who received two or more telemarketing calls to their cellular or
residential telephone numbers within any 12-month period by or on behalf of
Defendants, from four years prior to the date of Plaintiff's original complaint
through the date the Court certifies the class, during which time(s) Defendants
had not instituted or maintained the procedures or minimum standards required
under 47 C.F.R. § 64.1200(d), who are identified by Defendants' records as
residing in the State of Maryland at the time of the call(s).

**Maryland Pre-Recorded Call Class:**

> All persons who received one or more telephone calls to a residential telephone number using an artificial voice or pre-recorded voice to deliver a message, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class, who are identified by Defendants' records as residing in the State of Maryland at the time of the call(s).

Excluded from the Classes are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

58.     Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

59.     The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

60.     Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

61.     Plaintiff will fairly and adequately protect the interests of the Class defined herein. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions.

62.     Neither Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

63.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a

well-defined community interest in the litigation.

64.     Class Members are so numerous that their individual joinder is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

65.     Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

a.   Whether Defendants, or someone operating on their behalf, placed prerecorded voice calls to the cell phones of Plaintiff and the putative class members;

b.   Whether the voice technology used by Defendants (or on their behalf) qualifies as a "pre-recorded voice" under 47 U.S.C. § 227(b)(1);

c.   Whether Defendants' calls were "solicitations" as defined by the TCPA;

d.   If the calls were made by a third-party vendor of Defendants, whether an agency relationship existed between Defendants and any such third-party;

e.   If the calls were made by a third-party vendors of Defendants, whether Defendants "ratified" any violations; and

f.   Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

66.     Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing prerecorded voice calls to the Plaintiff and the putative class members.

67.     Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his

counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

68.     The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgements. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

69.     Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c) Against All Defendants By Plaintiff, Individually, and on Behalf of the NDNC Class)**

70.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

71.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id.*

72.     The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

73.     On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and landline residential telephone subscribers such as Plaintiff and the other Class members.

74.     Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and DNC Class members within a 12-month period without their legally effective consent to receive such calls. Plaintiff and DNC Class members never provided any form of consent to receive telephone calls from Defendants, and Defendants do not have legally valid evidence of such consent. Defendants did not have an established business relationship with Plaintiff and the other DNC Class members.

75.     Defendants' violations are willful because Defendants knew or should have known that Plaintiff and DNC Class members had not given prior express consent to receive

telemarketing calls made to telephone numbers placed on the Do Not Call List and that Defendants (or their agents) called such telephone numbers. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

76.     Plaintiff, on his own behalf, and on behalf of the other DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**SECOND CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d) Against All Defendants By Plaintiff, Individually, and on Behalf of the IDNC Class)**

77.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). The FCC regulation also provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> > (1)     Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > (2)     Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> >
> > ….
> >
> > (4)     Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of

> the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges

47 C.F.R. § 64.1200(d). Again, this regulation also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

79. On information and belief, Defendants and/or their agents also violated 47 C.F.R. § 64.1200(d)(1) and/or (2) by failing to maintain a written policy for maintaining a do-not-call list and/or informing and training all personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list. If Defendants had maintained a do-not-call list and training relevant personnel in the existence and use of the do-not-call list in a manner that complied with 47 C.F.R. § 64.1200(d)(1), Plaintiff would not have received Defendants' telephone calls.

80. On information and belief, Defendants and/or their agents also violated 47 C.F.R. § 64.1200(d)(4) by failing to disclose the name of the individual caller, their name, and a telephone number or address at which Defendants could be contacted. Defendants also spoofed the outgoing telephone numbers used to call Nock and DNC Class members, and/or their telemarketers failed to identify Defendants. If Defendants had complied with 47 C.F.R. § 64.1200(d)(4), they would have been exposed to significant TCPA liability because they would have been readily identifiable as the caller, and that exposure would have deterred Defendants from calling Plaintiff.

81. Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and DNC Class members within a 12-month period without their legally effective consent to receive such calls. Plaintiff and DNC Class members never provided any form of consent to receive telephone calls from Defendants, and Defendants do not have legally valid

evidence of such consent. Defendants did not have an established business relationship with Plaintiff and the other DNC Class members.

82.     Defendants' violations are willful because Defendants knew or should have known that they failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above, but still engaged in telemarketing as alleged above. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

83.     Plaintiff, on his own behalf, and on behalf of the other DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

### THIRD CLAIM FOR RELIEF
### Violation of 47 U.S.C. § 227(b)(1)(B) Against All Defendants
### by Plaintiff, Individually, and on Behalf of the Pre-Recorded Call Class

84.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Pre-Recorded Call Class.

85.     The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TPCA makes it unlawful for any person:

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B).

86.     The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations of 47 U.S.C. § 227(b) or "regulations

prescribed under" 47 U.S.C. § 227(b) "to enjoin such a violation" and/or to recover actual damages or "$500 in damages for each such violation," as well as treble damages where the "court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b)]." 47 U.S.C. § 227(b)(3).

47     Defendants and their agents also utilized artificial and/or prerecorded voice messages in calls to residential telephones of Plaintiffs and Pre-Recorded Call Class members.

48     Defendants and their agents do not and did not obtain legally effective prior express consent to call the Pre-Recorded Call Class members' residential telephone numbers.

49     Defendants and their agents violated 47 U.S.C. § 227(b)(1)(B) by placing telephone calls to the residential telephone numbers of Plaintiffs and the other members of the Pre-Recorded Call Class using an artificial or prerecorded voice without their prior express written consent.

50     Defendants willfully violated 47 U.S.C. § 227(b)(1)(B) because they knew that Plaintiff and the other Pre-Recorded Call Class members had not given prior express consent to receive calls made using an artificial, and/or prerecorded voice and that Defendants and their agents used these methods to call the residential telephone numbers of Plaintiff and the other Pre-Recorded Call Class members. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

51     Plaintiff, individually, and on behalf of the other members of the Pre-Recorded Call Class, seek to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3) against Defendants.

//

//

**FOURTH CLAIM FOR RELIEF**
**Violation of Md. Code, Com. Law, § 14-3201 Against All Defendants**
**by Plaintiff, Individually, and on Behalf of the Maryland NDNC Class**

52.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Maryland NDNC Class.

53.     Maryland law provides that a person may not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L). *See* Md. Code, Com. Law, § 14-3201(2).

54.     Maryland law provides that an individual who is affected by a violation of Md. Code, Com. Law, § 14-3201 may bring an action against a person that violates this subtitle to recover: "(1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation." Md. Code, Com. Law, § 14-3202. Maryland law further provides that each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation. *Id*.

55.     For each violation set forth in Plaintiff's First Claim for Relief, Plaintiff asserts a claim for statutory damages and reasonable attorneys' fees on behalf of the Maryland NDNC Class for a corresponding violation of Md. Code, Com. Law, § 14-3201.

**FIFTH CLAIM FOR RELIEF**
**Violation of Md. Code, Com. Law, § 14-3201 Against All Defendants**
**by Plaintiff, Individually, and on Behalf of the Maryland IDNC Class**

52.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Maryland IDNC Class.

56.     Maryland law provides that a person may not violate the Telephone Consumer

Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L). *See* Md. Code, Com. Law, § 14-3201(2).

53.     Maryland law provides that an individual who is affected by a violation of Md. Code, Com. Law, § 14-3201 may bring an action against a person that violates this subtitle to recover: "(1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation." Md. Code, Com. Law, § 14-3202. Maryland law further provides that each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation. *Id*.

54.     For each violation set forth in Plaintiff's Second Claim for Relief, Plaintiff asserts a claim for statutory damages and reasonable attorneys' fees on behalf of the Maryland IDNC Class for a corresponding violation of Md. Code, Com. Law, § 14-3201.

### SIXTH CLAIM FOR RELIEF
### Violation of Md. Code, Com. Law, § 14-3201 Against All Defendants
### by Plaintiff, Individually, and on Behalf of the Maryland Pre-Recorded Call Class

52.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Maryland Pre-Recorded Call Class.

57.     Maryland law provides that a person may not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L). *See* Md. Code, Com. Law, § 14-3201(2).

53.     Maryland law provides that an individual who is affected by a violation of Md. Code, Com. Law, § 14-3201 may bring an action against a person that violates this subtitle to recover: "(1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i)

$500 for each violation; or (ii) Actual damages sustained as a result of the violation." Md. Code, Com. Law, § 14-3202. Maryland law further provides that each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation. *Id.*

54.     For each violation set forth in Plaintiff's Third Claim for Relief, Plaintiff asserts a claim for statutory damages and reasonable attorneys' fees on behalf of the Maryland Pre-Recorded Call Class for a corresponding violation of Md. Code, Com. Law, § 14-3201.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Nock prays that the Court enter judgment and orders in their favor and against Defendant as follows:

a.     An order certifying the proposed Classes, directing that this case proceed as a class action, and appointing Plaintiff and his counsel to represent the Classes;

b.     Statutory damages as provided under 47 U.S.C. § 227(c)(5), including trebled damages for willful and knowing violations, against Defendants in favor of Plaintiff and the NDNC and IDNC Classes;

c.     Statutory damages as provided under 47 U.S.C. § 227(b)(3), including trebled damages for willful and knowing violations, against Defendants in favor of Plaintiff and the Pre-Recorded Call Class;

a.     Statutory damages as provided under Md. Code, Com. Law, § 14-3202, including trebled damages for willful and knowing violations, against Defendants in favor of Plaintiff and the Maryland NDNC, Maryland INDC, and Maryland Pre-Recorded Call Classes;

e.     Injunctive relief against Defendants in favor of Plaintiff and the members of the Classes, under 47 U.S.C. § 227(b)(3) and/or § 227(c)(5); and

f.     Such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE, ROBERT NOCK, demands a jury trial in this case.


Dated: March 5, 2024                    By:   s/Ethan Preston
                                              Ethan Preston (30836)
                                              ep@eplaw.us

PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg, Esq. (*pro hac vice* forthcoming)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Avenue
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864

*Attorneys for Plaintiff Robert Nock, on his own*
*behalf, and behalf of all others similarly situated*