**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF** | **101 WEST LOMBARD STREET** |
| **J. Mark Coulson** | **BALTIMORE, MARYLAND 21201** |
| **UNITED STATES MAGISTRATE JUDGE** | **P: (410) 962-4953 | F: (410) 962-2985** |
| | mdd_jmcchambers@mdd.uscourts.gov |

February 2, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE:   *Nock v. PalmCo Administration, LLC et al.*
      Civil No. 1:24-cv-00662-JMC

Dear Counsel:

Plaintiff, Robert Nock, individually and on behalf of all others similarly situated, brought this case against Defendants, PalmCo Administration, LLC d/b/a Indra Energy, PalmCo Power MD, LLC d/b/a Indra Energy, and PalmCo Energy MD, LLC d/b/a Indra Energy (collectively, "Indra" or "Defendants") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Maryland Telephone Consumer Protection Act, Md. Com. Law § 14-3201, *et seq.* (ECF No. 28). Currently before the Court are various discovery disputes that are mostly tied to a prior 2019 class action, *Abramson v. PalmCo PA LLC*, 19-cv-1675-MJH (W.D.Pa 2019), against other affiliates of Indra involving alleged violations of the TCPA through the use of unauthorized and pre-recorded telemarketing messages directed at consumers by different sales agents than are involved in the instant case. (ECF Nos. 142 and 143). Although that case did not involve any allegations by plaintiffs that Indra and its sales agents disguised telemarketing as in-person door-to-door marketing, Plaintiff nonetheless argues that various discovery responses should be supplemented or addressed based on information related to *Abramson*. Specifically, Plaintiff emphasizes that Indra filed crossclaims in *Abramson* against both of its sales agents, one of whom allegedly breached its contract that limited the sales agent to in-person door-to-door marketing such that any allegations concerning telemarking by that sales agent were not in compliance with that contract. *Abramson* was settled quickly after those crossclaims were brought.

Plaintiff also is seeking production of a 2019 email and related Request for Admission, not directly related to *Abramson*.

The issues have been fully briefed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall DENY the requested relief to the extent is related to Abramson, but GRANT the request relief regarding the 2019 email and related Request for Admission.

    **I.**    **Background**

The instant litigation is well underway, and the parties have had numerous discovery disputes requiring Court intervention. This matter was referred to the undersigned for discovery and all related scheduling by U.S. District Judge Richard Bennett on November 7, 2024. (ECF No. 49). The undersigned addressed various disputes in orders dated November 11, 2024, January 15, 2025, and March 10, 2025. (ECF Nos. 60, 75, and 86). On August 6, 2025, the undersigned issued

1

an Order deferring any further discovery rulings until the Plaintiff's motion to consolidate had been resolved. (ECF No. 131). Judge Bennett denied Plaintiff's motion to consolidate on December 17, 2025. Thereafter, the undersigned directed the parties to propose a schedule for remaining discovery and related deadlines and to file a joint status report on January 7, 2026. (ECF No. 138). The parties did so in a joint status report dated January 21, 2026, and alerted the Court of the instant discovery dispute. (ECF No. 139).

The parties formally raised the currently pending discovery issues in a January 26, 2026, letter to the Court pursuant to the discovery dispute process outlined in the Court's Memorandum to Counsel. (ECF No. 141). They have since each submitted letters to the Court outlining their respective positions. (ECF Nos. 142, 143). The parties indicate that they have conferred on these disputes on several occasions but have been unable to resolve the following matters. *Id.*

## II.    Analysis

### A.    *The Abramson Case*

As noted above, the disputed areas largely arise from whether and to what extent information related to this 2019 class action in the Western District of Pennsylvania is within the scope of discovery in the instant case. Accordingly, some description of *Abramson* and the issues and parties involved is necessary.

As an initial matter, contrary to Indra's arguments, the Court does not see a meaningful difference between the Indra entities involved in *Abramson* and the Indra named Defendants here. Were that Indra's sole argument, the Court would rule against it, given the common ownership, leadership and structure involved. However, there are other more meaningful differences that the Court finds dispositive in its denial of Plaintiff's requests to the extent they related to *Abramson*. First, the *Abramson* complaint is limited to telemarketing in violation of the TCPA, and raises no allegations against Indra for attempting to disguise telemarketing as in-person, door-to-door sales as alleged here. (ECF No. 142-1 at 21-24). Second, it involved neither Maryland consumers nor the April 2021 to June 2021 time period that this Court has repeatedly held is the proper focus for discovery in this case. *Id*. Third, the two Indra sales agents involved in *Abramson*, Synegence LLC ("Synegence") and Matrix Energy Group ("Matrix"), are not the same as the one that Indra used in the instant case (NSL). *Id*. at 21.

Nonetheless, Plaintiff claims that information related to *Abramson* is relevant to the issue of whether Indra knew or should have known in the present case that its sales agent NSL was disguising telemarketing efforts as in-person, door-to-door marketing efforts so as to shield Indra from TPCA liability. Plaintiff points primarily to crossclaims Indra filed in *Abramson* against Synegence and Matrix in support. The Court disagrees. First, as noted above, there is no allegation in the underlying complaint regarding such deception. Second, the allegation against Synegence in Indira's crossclaim is simply that Indra's contract with Synegence required Synegence's telemarketing efforts to comply with the TCPA. (ECF No. 142-1 at 28). Third, while it is true that Indra alleges in its crossclaim against the other sales agent, Matrix, was limited to in-person door-

2

to-door marketing and any telemarketing by Matrix would be a breach of that contract, there are no allegations that Matrix disguised its telemarketing as alleged against NSL in the present case. *Id*. at 29. Most fundamentally, the sales agents that Indra used in Pennsylvania—Synegence and Matrix, are not the same as the sales agent used in the instant case (NSL), nor are there any allegations of affiliation as between the three.

Plaintiff protests that one of the subcontractors used by Synegence in *Abramson*, Mr. Jabbar, is one of the same subcontractors used by NSL in the present case. 142-1 at 6-7. The Court accepts this as true for purposes of the present motion. However, as mentioned above, there is nothing to suggest any efforts by Mr. Jabbar on behalf of Synegence in *Abramson* were anything other than telemarketing, and Indra's crossclaim against Synegence (unlike Matrix) does not allege that Synegence's contract with Indra was limited to in-person, door-to-door sales.[1] Additionally, Plaintiff has presented information from the TPV.com records previously ordered produced by the Court that Matrix on behalf of Indra, on some other occasions *after Abramson*, and prior to the present case might also have used Mr. Jabbar for telemarketing. *Id.* at 7-8. While a factfinder might conclude that such information is sufficient to put Indra on notice that Mr. Jabbar was a telemarketer, it is information that Plaintiff already has in hand, and is only tangentially related to *Abramson* in that Matrix was a defendant in that action.

The Court also finds it significant that *Abramson* settled quickly after Indra's answer/crossclaims such that even if related information was potentially relevant, it is unlikely that much if any discovery or other investigation was performed such that there would not be responsive information, giving further support to Indra's position.

With that background, the Court discussed particular discovery issues raised by Plaintiff in its position statement.

  B. *Request for Production of Documents No. 16 and Abramson*

Plaintiff claims that Indira's response to Request for Production of Documents No. 16 ("RPD 16") is still deficient because Indra "never produced any documents related to, for instance, its crossclaim against Matrix in *Abramson*." *Id.*

To the extent that Plaintiff asserts that materials related to *Abramson* (if any) are further responsive, the Court disagrees for the reasons cited above.

  C. *Requests Concerning Abramson Litigation Files and Third-Party Vendor Materials*

---

[1] To the extent Plaintiff seeks to argue that Mr. Jabbar's work with Synegence was strictly that of a telemarketer rather than as an outdoor salesperson and that Indra was or should have been on notice of that (assuming for purposes of argument that Indra knew Mr. Jabbar was also working with NSL), the Court's ruling below regarding production of the 2019 email allows it to make that argument.

3

Request for Production of Documents Nos. 20-22 and Interrogatories No. 17-18 relate explicitly to *Abramson*. For the reasons outlined above, the Court finds the information sought is outside the scope of discovery.

### D. Requests Concerning a December 2019 Synegence Email and Alleged Login Credentials

Plaintiff has also made two requests not directly related to *Abramson*, one for production and one for admission, related to a December 2019 email from Synegence, LLC. RPD No. 22 seeks "All documents concerning (including true and correct copies of every email chain which includes) the email from sherrie@synagenceenterprise.com to rbennett@indraenergy.com on December 5, 2019, at 6:19 pm ET." Plaintiff apparently seeks to establish through this email that Indra was on notice that Mr. Jabbar was a telemarketer, not a door-to-door salesperson before the activities in the current case, as evidenced by Mr. Jabbar being provided credentials to enter telemarketing information into Indra's system. (ECF No. 142-1 at 6-7 and 94). In response, Indra states, "Whether a *telesales* vendor may have provided login credentials to its own third-party vendor in 2019 does not establish that Indra knew or should have known that an unrelated door-to-door vendor would, years later, allegedly engage with an independent, third-party sub-vendor to conduct undisclosed telemarketing in violation of Indra's contracts.: (ECF 143 at 3).

While Indra's position may well be an argument for dispositive motions or trial, the Court will nonetheless order production of the December 2019 email as it has some tendency to show that Indra was on notice at least that Mr. Jabbar in the past had performed telemarketing services, not door to door sales. The production shall take place within twenty (20) days of this Order.

Regarding Request for Admission No. 22, Plaintiff seeks the following: "Admit that the December 2019 email from Synegence, LLC (attached as the exhibit to this Request) contains login credentials that provided access to SPA and/or Indra's other server(s) and/or information technology system(s)." (ECF No. 142-1 at 97). Consistent with the Court's ruling above, Indra shall provide a substantive response, and the "login credentials" shall mean the "username" and "password" notations which access an Indra portal. Indra shall respond to RFA No. 22 within twenty (20) days of the entry of this Order.

### E. Interrogatories Seeking "Every Complaint" and "Every Payment" Relating to Marketing Practices

The Court has already ruled on Interrogatories Nos. 7-8. (ECF No. 86). In the Court's previous Opinion and Order concerning Interrogatories Nos. 7-8, the undersigned determined:

> [A]s currently phrased, the interrogatories also seek information which is likely not relevant or proportional to the needs of the case, and which could unreasonably burden Indra. Indra may receive marketing practice complaints on issues completely unrelated to the subject matter of this case. Accordingly, the Court will

4

define "complaints" for the purposes of Interrogatories 7 and 8 as complaints based on efforts to disguise telemarketing as door-to-door sales.

(ECF No. 86 at 3). Plaintiff claims that Indra's response to Interrogatories Nos. 7-8 is insufficient because it did not volunteer the information related to the *Abramson* case. As discussed above, the Court will not order supplementation on that basis. However, Plaintiff also states, "Nock found *Abramson* on his own, but obviously there is a possibility that Indra has concealed other responsive complaints involving other subsidiaries" suggesting that there may be responsive information beyond *Abramson* that has yet to be produced. (ECF No. 142 at 4). To that extent, it is unclear what other information Plaintiff seeks to receive that he does not already have. Indra states that it "is unaware of any complaints or settlement payments about alleged telemarketing disguised as door-to-door sales beyond what has already been disclosed in discovery." (ECF No. 143 at 3). Considering Indra's insistence that it has acted in good faith and complied with the Court's March 10, 2025 Order, there is no basis in the present record to conclude that Indra has failed to comply with the narrowed interrogatories. Therefore, Plaintiff's requests for further supplementation is denied.

### III. Conclusion

For the foregoing reasons, Defendants shall, within twenty (20) days of the entry of this order serve produce the requested December 2019 email and answer the related Request for Production. Plaintiff's requests are otherwise denied.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge